UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pedro O.,[1]

       Petitioner,                 Case No. 26-cv-361 (ECT/LIB)

v.                            **REPORT AND RECOMMENDATION**

Kristi Noem, et al.,

       Respondents.

Pursuant to a general referral made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Pedro O.'s Petition for a writ of habeas corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Pedro O.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein; that Respondents be ordered to immediately release Petitioner in Minnesota upon the issuance of any Order adopting the present Report and Recommendation with confirmation of Petitioner's release to be filed with the Court within forty-eight hours of said Order; and that Respondents be required to release Petitioner with all his personal effects seized during his arrest, as well as, all identification documents and immigration documentation.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because the relevant facts are not in dispute and because a hearing on the Petitioner's claim would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983).

I.   **Background**[3]

Petitioner is a citizen of Mexico. (See Petition [Docket No. 1] ¶ 33). Petitioner first entered the United States without inspection in 1996 or 1997 when he was three or four years of age. (Id. ¶ 34). Petitioner did not encounter any law enforcement officials upon entering the United States. (See Id.).

On May 24, 2017, the Department of Homeland Security initiated removal proceedings against Petitioner. (Id. ¶ 35). During those proceedings, Petitioner filed an Application for Asylum and for Withholding of Removal in which he sought protection under the Convention Against Torture Act. (Id. ¶ 36). On September 24, 2020, an immigration judge order Petitioner removed from the United States, however, the immigration judge also granted Petitioner's request for deferral of removal to Mexico pursuant to the Convention Against Torture Act. (Id. ¶ 38). The Department of Homeland Security appealed the immigration judge's decision to grant Petitioner's request for deferral of removal, but the Board of Immigration Appeals affirmed the immigration judge's decision on July 30, 2021. (Id. ¶ 39).

Petitioner was detained in the custody of Immigration and Customs Enforcement ("ICE") during some of the time his removal proceedings were ongoing, but he was released from custody under an Order of Supervision on October 28, 2021. (Id. ¶ 40–42).[4] Until his recent arrest, Petitioner has remained on supervise release and compliant with the conditions of his release. (Id.).

---

[3] "Because Respondents did not contest any of the factual allegations in the Petition, these allegations are deemed admitted." Jose A. v. Noem, No. 26-cv-480 (JMB/ECW), 2026 WL 172524, at *1 n.2 (D. Minn. Jan. 22, 2026) (citing Bland v. California Dep't of Corr., 20 F.3d 1469, 1474 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000)).

[4] The Order of Supervision containing the conditions of Petitioner's release is not in the record. When discussing the background and administrative history in an action such as the present case, the Court would typically provide citations to the operative habeas petition; the documentational evidence underlying the petitioner's arrest, detention, release, and redetention; and any documents from the immigration-related proceedings. Additionally, in a case where the Petitioner was released subject to certain conditions as imposed through an order from an immigration judge, the Court would cite to that order to discuss its contents. This, however, is not possible in the present case because Respondents failed to provide any such evidence. Respondents were ordered to file an answer to Petitioner's present Petition to include a reasoned memorandum of law and "[s]uch affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised" in the present Petition. (Order [Docket No. 4]).

On December 20, 2025, Immigration and Customs Enforcement officers arrested Petitioner in Minnesota as part of Operation Metro Surge. (Id. ¶ 5). Since that time, Petitioner has remained in ICE's custody, and he is presently detained in Minnesota. (Id.).

Petitioner initiated this action on January 16, 2026. (See Petition [Docket No. 1]). As relief, Petitioner seeks his immediate release from detention. (See Id. ¶ 7).

On January 20, 2026, the undersigned issued an Order establishing a schedule for the parties to submit briefs on the present Petition. (Order [Docket No. 4]). Respondents were permitted fourteen days in which to respond to the present Petition.

Respondents filed their memorandum on February 3, 2026. (Mem. [Docket No. 5]). Respondents' memorandum, however, ignores large swath of the present Petition and Petitioner's argument in support thereof. (See Id.). For example, Respondents mischaracterize Petitioner's challenge here as a challenge to only the length of his detention. (See Id.) (discussing Zadvydas v. Davis, 533 U.S. 678 (2001)). Respondents' memorandum goes on to proffer arguments on that basis and only on that basis. The problem, however, is that Petitioner's argument is not so limited as characterized by Respondents. (See Petition [Docket No. 1]). The present Petition explicitly and in no uncertain terms challenges the constitutionality of Petitioner's arrest and his redetention arguing that Respondents have no statutory basis for either his arrest or redetention while he remained compliant with his conditions of supervision. (See Id. ¶¶ 42–46, 56, 59–62, 83–89, 91). Respondents simply fail to provide any substantive response to the core of Petitioner's arguments.

II.     **Discussion**

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, district courts have been vested with the

---

Respondents failed to comply with the Court's direction. Respondent did not file any documentational evidence or affidavit providing any information regarding Petitioner's detention, his release in 2021, his recent rearrest, his present detention, or even an affidavit acknowledging the facts of this case. Nevertheless, the Court finds that the present record is sufficient to resolve the issues raised in the present Petition.

authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The district court's habeas jurisdiction includes the authority to adjudicate habeas challenges to a noncitizen individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

In the United States, immigration law permits "authorized immigration officials to detain some classes of [noncitizens] during the course of certain immigration proceedings" Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). For example, 8 U.S.C. § 1231 provides that after an individual is ordered removed from the United States, immigration officials "shall detain the" individual "[d]uring the removal period[.]" 8 U.S.C. § 1231(a)(2)(A). The removal period is a "period of 90 days" and under circumstances like the present case, the removal period "begins on . . . [t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1).

When an individual becomes subject to a final order of removal and the removal period expires without the individual being removed, specific regulations and statutes control the government's ability to detain, release, and revoke the release of the individual. See, e.g., 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4, 241.13. Once such an individual is released from custody pursuant to conditions of supervision, ICE's ability to redetain that individual is constrained by ICE's own regulations, 8 C.F.R. § 241.4 and 241.13. If ICE previously determined that there was no significant likelihood of removal of said individual in the reasonably foreseeable future, then § 241.13 applies; otherwise, § 241.4 applies. See 8 C.F.R. §§ 241.13(a), (b)(1), (g).

When an individual is released pursuant to conditions under § 241.13, that release can be revoked on two grounds: violation of supervised release or changed circumstances. 8 C.F.R. § 241.13(i). Under the latter, ICE "may revoke an [individual's] release . . . and return the [individual] to custody if, on account of changed circumstances," ICE "determines that there is a significant likelihood that the [individual] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In either scenario—violation of supervised release or changed circumstances—the regulations require ICE to notify the individual "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to [ICE's] custody to afford the [individual] an opportunity to respond to the reasons for revocation stated in the notification. The [individual] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [sic] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3). It is ICE's burden to demonstrate that "changed circumstances" justify the revocation of release. See, e.g., Roble v. Bondi, 803 F. Supp. 3d 766, 772–73 (D. Minn. 2025); Escalante v. Noem, No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 150–51 (D. Mass. 2025).

"The procedures set forth in 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." Bulle v. Wesling, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at *2 (D.R.I. Jan. 23, 2026) (citing Jimenez v. Cronen, 317 F. Supp. 3d 626, 655 (D. Mass. 2018)). Noncitizens released pursuant to 8 C.F.R. § 241.13 under conditions of supervision maintain a protected liberty interest in their continued release. See Bulle, 2026 WL 183840, at *2; Villanueva v. Tate, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025) (discussing Zadvydas v. Davis, 533 U.S. 678 (2001); Young v. Harper, 520 U.S. 143 (1997); Morrissey v. Brewer, 408 U.S. 471 (1972)). Accordingly, any attempt to redetain an individual who

5

has been released under § 241.13 necessarily implicates the individual's constitutionally protected liberty interests. See Villanueva, 801 F. Supp. 3d at 704. Consequently, "ICE violates a noncitizen's due process rights when the agency re-detains them and fails to comply with these revocation procedures." Bulle, 2026 WL 183840, at *2.

In the present case, the first requirement of § 241.13—that the removal period has expired—is clearly met. As Respondents acknowledge, Petitioner is subject to a removal order dated September 24, 2020. (See Order [Docket No. 2-1]). That removal order became final on October 24, 2020, when Petitioner's time to appeal the removal order expired without Petitioner filing any such appeal. See 8 C.F.R. §§ 1003.38, 1241.1, 1252(a)(1), 1252 (b)(1).[5] Petitioner's removal period thus began on that date, and the removal period expired ninety days later on January 22, 2021. That date has long since passed.

Because the removal period has expired, Petitioner's redetention is subject to the requirements of either § 241.4 or § 241.13. If ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future, then § 241.13 applies. But if ICE has not previously made such a determination, then § 241.4 applies.

The record in the present case demonstrates that ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future, and therefore, § 241.13 governs Petitioner's redetention. Neither party provides the Court with a copy of the Petitioner's Order of Supervision. Respondents do not specify or allege the basis on which that order was issued. However, the relevant statutory provisions provide that "[b]efore making any recommendation or decision to release a detainee," immigration officials "must conclude," among

---

[5] As noted above, the government appealed the immigrations judge's order to the extent it granted Petitioner's request for deferral of removal under the Convention Against Torture Act, but Petitioner did not appeal the immigration judge's order that Petitioner was removable. The government's appeal of the withholding-only decision of the immigration judge does not alter the date on which the removal order becomes final. Moreover, even if the Court were to use the date the BIA affirmed the immigration judge's decision as the date Petitioner's removal order became final, the removal period expired on October 28, 2021, and that date has also long since passed as well.

other things that "[t]ravel documents for the [individual] are not available or, in the opinion of [ICE], immediate removal, while proper, is otherwise not practicable or not in the public interest." 8 C.F.R. § 241.4(e); see 8 C.F.R. § 241.13(h)(1). This appears to indicate that Petitioner's release was based on a decision that there was no significant likelihood of his removal in the reasonably foreseeable future.[6] Under these circumstances, the Court concludes "that ICE must have [necessarily] made a determination that 'there was no significant likelihood of removal in the reasonably foreseeable future'" prior to issuing the Petitioner's Order of Supervision. See Pham v. Bondi, No. 25-cv-1157, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025), report and recommendation adopted, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025); Hamidi v. Bondi, No. 25-cv-1205, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025), report and recommendation adopted, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025); Claudio A.A. v. Bondi, No. 26-cv-742 (KMM/LIB), 2026 WL 468232, at *5 (D. Minn. Feb. 12, 2026), report and recommendation adopted, 2026 WL 478347 (D. Minn. Feb. 18, 2026).

Because ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future and because the removal period has expired, ICE was required to satisfy the requirements of § 241.13(i) before revoking Petitioner's release. The question before the Court then is whether ICE complied with § 241.13(i).

Here, the record demonstrates that Respondents <u>unequivocally failed</u> to comply with any of § 241.13(i)'s requirements. As an initial matter, there is no indication that any authorized official actually revoked Petitioner's release. Although Petitioner was arrested and has certainly been detained, Respondents do not offer any evidence, or even allege, that Petitioner's arrest was made

---

[6] Moreover, the facts of the present case also demonstrate that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. The only country to which Petitioner has been ordered removed is Mexico, but Petitioner cannot be removed to Mexico. Moreover, Petitioner specifically asserts, and Respondents do not refute, that the government has not identified any other country to which it intends to remove Petitioner. (See Petition [Docket No. 1] ¶ 43). There is simply no indication that the government has made any effort to even locate a country to which it may remove Petitioner. There is simply no basis in the present record upon which it could be reasonably concluded that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

7

pursuant to a revocation of his release. In the absence of any evidence that an authorized immigration official "lawfully revoked" Petitioner's release, ICE's arrest and redetention of Petitioner without any other asserted basis for arresting and detaining Petitioner represents a patent violation of Petitioner's due process rights entitling him to habeas relief. See, e.g., Claudio A.A., 2026 WL 468232, at *5 (citing Villanueva, 801 F. Supp. 3d at 699–700).

Furthermore, assuming solely for the sake of argument that Petitioner's arrest was the result of an authorized official revoking Petitioner's release under § 241.13(i), Respondents have wholly failed to demonstrate the existence of any proper grounds for revocation. As noted above, when an individual is released pursuant to §241.13(i), like Petitioner, ICE can revoke that release on only two grounds: violation of supervised release or changed circumstances. Neither is present here. Respondents do not challenge Petitioner's assertion that he was in compliance with all conditions of release prior to his December 20, 2025, arrest. Respondents also fail to identify any "changed circumstance" to support the conclusion that there is now a significant likelihood of Petitioner's removal in the reasonably foreseeable future.[7]

Respondents' failure to demonstrate a proper basis to revoke Petitioner's release under § 241.13(i) is a violation of Petitioner's due process rights, and Respondents' failure here represents a sufficient, independent basis to grant habeas relief to Petitioner. See, e.g., Claudio A.A., 2026 WL 468232, at *6 (citing Zhang Haixiang v. Dep't of Homeland Sec., No. 25-cv-1890, 2025 WL 3683126, at *3 (C.D. Cal. Dec. 2, 2025), report and recommendation, 2025 WL 3679184 (C.D. Cal. Dec. 18, 2025); Bulle v. Wesling, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at *8 (D.R.I. Jan. 23, 2026); Faysal N. v. Noem, No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at *5 (D. Minn. Jan. 6, 2026); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 784–85 (D. Minn. 2025)).

---

[7] Indeed, Respondents do not even allege that any circumstances have changed or that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. See fn. 6.

Respondents' lack of compliance with their own regulations does not end there. Even if Respondents possessed a good faith basis to believe grounds for revocation existed under § 241.13(i), Respondents still failed to comply with § 241.13(i)'s requirement that Petitioner be provided with prior notice of revocation and the basis for that revocation. There is simply no indication in the record that Respondents provided Petitioner, at the time of his arrest, with notice of the revocation or the basis for that revocation as required by § 241.13(i)(3). Petitioner also specifically alleges, and Respondents do not refute, that he has not received any such notice. (See Petition [Docket No. 1] ¶ 42). Respondents do not even allege that they had provided Petitioner or his counsel with notice that Petitioner's release was being revoked by the time Respondents filed their memorandum—forty-five days after Petitioner was redetained. The complete lack of the notice as required by § 241.13(i)(3) represents a violation of Petitioner's due process rights and another sufficient, independent basis upon which to grant habeas relief to Petitioner. See Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. 2025); Claudio A.A., 2026 WL 468232, at *7; see also Villanueva, 801 F. Supp. 3d at 699–700; Bulle, 2026 WL 183840, at *6, 8–9; Faysal N., 2026 WL 36066, at *5; Sarail A., 803 F. Supp. 3d at 784.

Still yet, that does not end Respondents' failures to comply with ICE's own regulations. Respondents have also failed to comply with the other requirements of § 241.13(i)(3) which provide that upon revocation of an individual's release under an Order of Supervision, ICE "will conduct an initial informal interview promptly after" the individual's return to ICE custody "to afford [the individual] an opportunity to respond to the reasons for revocation stated in the notification" of revocation. See 8 C.F.R. § 241.13(i)(3). At the informal interview, the individual is permitted to submit evidence to show that there is no significant likelihood that the individual will be removed in the reasonably foreseeable future. Id. Following that interview, ICE officials are required to

9

determine whether the facts then support revocation of release. Id. In the present case, none of these requirements have been satisfied.

There is no indication on the record that an informal interview was conducted with Petitioner to provide him with an opportunity to respond to the hypothetical basis for the revocation of his release. Likewise, the record lacks any indication that Petitioner was permitted an opportunity to submit evidence to show there is no basis for revocation under § 241.13(i), and there is certainly no indication, or even assertion, that any ICE official has undertaken any process whatsoever to determine whether Petitioner's circumstance warrant revocation of release. Respondents' complete failure to comply with their own requirements represents a violation of Petitioner's due process rights, and Respondents' failure here too represents a sufficient, independent basis to grant Petitioner habeas relief. See, e.g., Claudio A.A., 2026 WL 468232, at *7; Bulle, 2026 WL 183840, at *6–7; Zhang Haixiang, 2025 WL 3683126, at *3; Faysal N., 2026 WL 36066, at *5.[8]

In summation, Petitioner has shown that ICE's redetention of him on December 20, 2025, violated Petitioner's due process rights because ICE wholly failed to comply with its own regulations under § 241.13(i). Agencies such as ICE are required to follow their own federal regulations; the constitutional protections of due process require agencies to do so when detaining or redetaining an individual. See, e.g., Sarail A., 803 F. Supp. 3d at 779; Faysal N., 2026 WL 36066, at *3; Zhang Haixiang, 2025 WL 3683126, at *3; Bulle, 2026 WL 183840, at *9; Rondan Jarrett v. Raycraft, No. 26-cv-244, 2026 WL 319044, at *9 (W.D. Mich. Feb. 6, 2026). When ICE

---

[8] For all the reasons discussed herein, § 241.13(i) controls the revocation of Petitioner's release, and Respondents have wholly failed to comply with the requirements of § 241.13(i) which therefore entitles Petitioner to habeas relief. The Court notes, however, that even assuming solely for the sake of argument that the revocation of Petitioner's release was governed by § 241.4, Petitioner would still be entitled to the same habeas relief because Respondents have also wholly failed to comply with the due process requirements of § 241.4. For example, § 241.4(l)(2) requires the revoking official to make an individualized determination as to revocation including the consideration of certain factors before revoking an individual's release, and there is no indication, or even allegation, in the present case that an immigration official has made such a finding. Similarly, there is no indication that Respondents have complied with § 241.4(l)'s requirement that, upon revocation of release, ICE must initiate a review process with notification to the individual of the process, schedule an interview with the individual, and make a determination as to whether revocation is warranted. In short, Respondents have arrested and redetained Petitioner with a complete lack of due process, and thus, Petitioner is entitled to habeas relief whether his circumstances are analyzed under § 241.4 or § 241.13(i).

fails to meet the requirements of § 241.13(i) in revoking an individual's release, the appropriate remedy is the individual's immediate release subject to no conditions beyond those previously imposed in the order effectuating the individual's initial release from ICE custody. See, e.g., Sarail A., 803 F. Supp. 3d at 785; Faysal N., 2026 WL 36066, at *3–6; Zhang Haixiang, 2025 WL 3683126, at *3–4; Bulle, 2026 WL 183840, at *8–9; Rondan Jarrett, 2026 WL 319044, at *9–11; Claudio A.A., 2026 WL 468232, at *8.

On that basis, the undersigned recommends that Pedro O.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein. More specifically, the undersigned recommends that Respondents be ordered to immediately release Petitioner in Minnesota following the issuance of any Order adopting the present Report and Recommendation.[9] The undersigned further recommends that Respondents be required to confirm Petitioner's release within forty-eight hours of any Order adopting this Report and Recommendation.

### III. Objection Period

The undersigned notes that one last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the

---

[9] It is further recommended that upon Petitioner's release Respondents be ordered to return all of Petitioner's personal property and documentation he had with him at the time he was detained on December 20, 2025.

present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends Petitioner be released would be doubled fourteen times over by the end of the standard objection period. Put differently, if the parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to two (2) days, and correspondingly, the Court reduces to one (1) day the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended relief.

### IV.   Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Pedro O.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein;

2. Respondents be required to immediately release Petitioner in Minnesota without subjecting him to conditions greater than those specifically imposed in his October 28, 2021, Order of Supervision;

3. Respondents be required to release Petitioner with all his personal effects seized during his arrest, as well as, all identification documents and immigration documentation;

4. Respondents be required to confirm Petitioner's release in Minnesota from custody within forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation; and

5. Respondents be precluded from redetaining Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.


Dated: February 27, 2026                  s/Leo I. Brisbois
                                                                        Hon. Leo I. Brisbois
                                                                        U.S. MAGISTRATE JUDGE